<div style="margin-left:2em">Essex<br>
*vs.*<br>
Milton.</div>

> Judgment must, therefore, be rendered on the verdict for the defendants.

*Adams* and *Bailey*, for plaintiffs.
*Allen* and *Whittemore*, for defendants.

### GUY CATLIN *vs.* ANNA WASHBURN.

When a deed is proved agreeably to the 7th section of the act relative to conveyances of real estate, it is not necessary that it should appear from the certificate of the magistrate, that the grantor had refused to acknowledge the deed. Nothing more is necessary to the authentication of the instrument than a certificate of the proof by the subscribing witnesses, and notice of the presence or absence of the grantor at the examination of the witnesses ; and if he was absent, a certificate that he was duly summoned.

An appeal taken from the determination of a justice, before whom a deed is proved, has no effect whatever on the proof taken by the justice and certified on the deed. And when an appeal is had in such a case by the grantor, and the execution of the deed is proved in the county court by the subscribing witnesses, the clerk's certificate of the proof need not be read as evidence to show the authentication of the deed.

*Semble*, that an appeal in such case is only taken from the adjudication of the justice respecting the cost.

D

CHITTENDEN
January,
1830.

Catlin
vs.
Washburn.

When a defendant in *ejectment* denies the title of the plaintiff, and also denies his tenancy, or, which is equivalent, requires the plaintiff to prove these points, he cannot insist on the want of notice to quit, although it should appear in the course of the trial, that he was tenant from year to year to the plaintiff.

An agreement between a mortgagor and mortgagee, that the latter should hold the lands mortgaged in full satisfaction of the debt for which the lands were pledged, cannot be considered as discharging the mortgage and paying the debt at the same time.

If, while an action of ejectment is pending in court, a decree of foreclosure be obtained by a third person against the plaintiff for the premises demanded, such decree, if the time for redemption be unexpired, will not prevent a recovery by the plaintiff in the action of ejectment.

This was an action of *ejectment* to recover the seizin, &c. of about thirteen acres of land with the tenements thereto belonging, being part of lot no.———At the trial in the county court the plaintiff proved that in March, 1799, one *Benjamin Adams* lived on the premises in question with his family, and remained there till the year 1807 ; that afterwards one *Ellick Powell* purchased of *Adams* and occupied the same till the spring of 1813, when *Abram Brinsmaid* entered under said *Powell*, and remained there till April, 1815, when he gave up the possession to *Giles T. Chittenden*, who had purchased of *Powell*. The plaintiff also proved, that after the purchase of the premises by *Chittenden*, *Edward Washburn*, late husband of the defendant, went into possession under *Chittenden* in the spring or fore part of the summer of 1815, and remained there all, or most, of the time with his family till the spring of 1826, when he died, leaving his wife, the defendant, in possession.

The plaintiff claimed title by virtue of a deed from said *Chittenden* to him executed at *Quebec*, August 14, 1816, and acknowledged in the usual form before a notary public. This deed not having been acknowledged before a proper magistrate, the plaintiff had taken measures to have it authenticated before a justice of the peace in *Burlington* according to the 7th section of the act respecting conveyances of real estate. It seems that *Chittenden* had been duly summoned to appear before the justice to hear and attend to the testimony of the subscribing witnesses, and that the justice had thereupon taken the proof, and endorsed upon the deed the following certificate :

" *State of Vermont,*
" *Chittenden County,* ss. } *Burlington*, January 23d, 1817,

" Then *L. T. McPherson* personally appeared, and after be-
" ing carefully examined, duly cautioned and sworn according to
" law, deposeth and saith, that he, the said *L. T. McPherson*,

"saw *Giles T. Chittenden* voluntarily sign and seal this deed, at<span>Chittenden</span>
"*Quebec* on the 14 day of August, 1816; and that he, the said *L.* *January,*
"*T. McPherson*, subscribed his name as a witness at the same ——————
"time. *Sandford Gadcomb, Esq.* attorney for *Giles T. Chitten-* Catlin
"*den*, the grantor, attended the taking of the above testimony. Washburn.
                "Before *David Russel*, just. peace."
        "The sum of $16 80 cents cost was taxed against the grantor."

*Chittenden* appealed from the determination of the justice to the county court, and there such proceedings were had, that the clerk made the following certificate, which was also endorsed on the deed :

"*State of Vermont, Chittenden County Court*, February "term, A. D. 1819. Be it remembered, that on the 23d day of "February, 1819, being the second day of said term, personally "appeared *L. T. McPherson*, and in open court, after being care-"fully examined, duly cautioned and sworn, made solemn oath "that he saw *Giles T. Chittenden* voluntarily sign and seal the "within deed, and deliver the same to *Guy Catlin* at *Quebec*, on "the 14th day of August, 1816; and that he the said *L. T. Mc-*"*Pherson* subscribed his name thereto as a witness at the same "time ; and that *Frs. Tetu*, the other subscribing witness, "subscribed his name thereto as a witness at the same time in his "presence. Therefore, the court do allow this deed to be re-"corded. March 12th, 1819. By order of the court.
                                "*Phineas Lyman*, clerk."

The plaintiff offered this deed as evidence of his title, and, in connection therewith, a copy of the record of all the proceedings both before the justice and the county court. To the admission of the deed the defendant objected, because there was no evidence of a legal acknowledgment thereof by the grantor ; and she also objected to the admission of the copy of record, on the ground that it did not show that the proceedings, which were the foundation of the record, were conformable to law ; and that the instrument, having been executed in another government, the grantee was not entitled to any process or remedy to compel the grantor to acknowledge it ; also that these proceedinges had never been recorded in the town clerk's office in *Burlington*, and that they did not agree with, or support, the certificate purporting to have been made by *Phineas Lyman*, clerk of said court, on the back of said deed ; and that it did not appear from the said record that there was any inquiry or proceeding in the county court touching the acknowledgment of said deed. But the court overruled all the objections, and admitted the deed and the copy of record. The plaintiff then offered, and gave in evidence, a paper purport-

Chittenden
January,
1830.

Catlin
vs.
Washburn.

ing to be a *notice to quit,* and testimony showing that a copy of the same was delivered to the said *Edward Washburn* in March, 1826 ; also another paper of similar import, and testimony showing that a copy thereof was delivered to the defendant in July, 1826. The defendant objected to the admission of this evidence on the ground that they were not according to law : but the court allowed them to be read to the Jury.

The defendant, in order to prove that the deed from *Chitenden* to the plaintiff was a mortgage, offered and read to the jury a writing of defeasance executed by the plaintiff at the time the deed was executed, in which he had agreed to release the premises to *Chittenden* in case the latter should pay certain debts due from him and from *G. T. Chittenden & Co.* to the plaintiff, and pay certain other sums therein mentioned ; but if *Chittenden* should fail to make said payments, the plaintiff was to hold the premises conveyed in full satisfaction of said debts. The defendant also gave in evidence another writing signed by the plaintiff and *Truman Chittenden,* surviving partner of *G. T. Chittenden & Co.* for the alleged purpose of showing payment of the said sums of money specified in the writing of defeasance, before the commencement of this action, which was in February, 1827. By this last instrument it was agreed by the parties thereto, that the plaintiff should hold absolutely, and free from any right of redemption, the real estate conveyed by said deed, in full satisfaction of the demands mentioned in said writing of defeasance, which demands were discharged and settled by said agreement. The defendant also offered in evidence a decree of the court of chancery made in the case of *B. Adams* against the plaintiff, in January, 1829, since the commencement of this action, by which it appeared that three acres and thirty three one hundredths of an acre of the land had been decreed to said *Adams,* on failure of the plaintiff's paying a certain sum by a time therein mentioned; but that the time of redemption had not expired. The defendant, on the trial, put the plaintiff to the proof of his title to the premises in question, and of the tenancy of defendant.

On this evidence the counsel for the defendant requested the court to charge the jury, that the plaintiff could not recover the seizin and possession of the house and the three acres and thirty three one hundreths of an acre of land, decreed to the said *Benjamin Adams* by the said court of chancery ; that the defendant was entitled to notice to quit, which must be given six months, at least, before the expiration of the year, that is, the time of the

year when the tenancy commenced, and that the two notices read to the jury by the plaintiff, were not legal or sufficient notices ; that the defendant's disclaiming the tenancy on the trial, and putting the plaintiff to the proof of his title, did not dispense with the necessity of notice to quit : but that she was entitled to such notice, unless she claimed to hold adversely to the plaintiff at the time of the commencement of the suit ; and that if the jury found that the said mortgage was paid, before the action was brought, they must find for the plaintiff. But the court refused so to charge the jury, but did charge them, that the plaintiff was entitled to recover the seizin and possession of the whole premises, if any part ; that if the jury should find that the defendant had put the plaintiff, on the trial, to the proof of his title, and defendant's tenancy, the plaintiff need not show notice to quit ; and if they did not so find, yet if they should find that the plaintiff served the notice which had been read to them on *Edward Washburn*, in March, 1826, and the other on the defendant in July afterwards, the defendant would not be entitled to any further notice to quit, even though *Washburn* was tenant in his life time from year to year ; that the jury had nothing to do with the question whether the mortgage from *Chittenden* to *Catlin* was paid or not, and that the paper produced for that purpose had no tendency to prove a payment or discharge of the mortgage.

The jury found for the plaintiff to recover the seizin and possession of the whole premises in question. The defendant excepted to the said decisions and charge of the court, and the cause was removed to this Court for a final hearing on the points raised by the said exceptions.

*Bailey and Marsh for the defendant.*—The mode of proving the execution of a deed as authorized by the 7th section of the act regulating conveyances, is an exception to the general law, and therefore, the proceedings must bring the case clearly under the exception. Moreover, as the authority exercised by the court, or magistrate, is in derogation of the general law of the land, it must appear, upon the face of the proceedings, and not by matter *dehors*, that the authority given has been very strictly pursued. To apply these principles to the present case, which the plaintiff contends to have arisen under the said 7th section, (*Rev. stat. p.* 168,) the proceedings ought to show, 1st, the refusal of the grantor to acknowledge upon *proper* request ; 2d, the issuing and legal service of a summons to the grantor to hear the testimony of

*(margin note:)* CHITTENDEN January, 1830.

Catlin
*vs.*
Washburn.

CHITTENDEN one or more of the subscribing witnesses to the deed ; 3d, the
January.
1830.     oath of at least one of the subscribing witnesses, and 4th, the

Catlin    whole *proof* ought to be certified upon the deed, or annexed to it,
vs.
Washburn.  and recorded, together with the deed, in the town clerk's office.
The plaintiff at the trial undertook to establish his deed by certain
certificates, endorsed upon the deed, and by a copy of the record
of the proceedings before the magistrate and in the county court.
The certificates were objected to because they showed no reason
for taking the proof, and the record, because it was evidence
*dehors*, did not agree with or support the certificates endorsed up-
on the deed, did not show the proceedings to be conformable to
law, and did not appear to have been recorded in the town clerk's
office in *Burlington.*

The principles by which this question ought to be decided seem
to have been settled in the case of *Pearl* vs. *Howard, (1 Chip.
Rep.* 173.)    According to that case, which is supported by very
strong reasoning, the certificates alone are not sufficient, and the
record, not having been certified upon the deed, or entered upon
the books of the town clerk, would be evidence *ab extra,* and there-
fore, inadmissible.    The words, of the statute, moreover, imply,
that the intention of the legislature was that the whole proceedings
should be certified upon the deed.    It is provided that the 'proof,'
and a certificate thereof shall be endorsed upon the deed.    *(Rev.
laws, p.* 168.)    Now, *proof* does not mean *evidence* barely, as
the magistrate, who made the certificate, seems to have supposed ;
but includes the whole process.    In the 6th section of the act reg-
ulating conveyances, which provides for those cases, where no
previous process is necessary, the statute requires the *evidence,*
merely, to be certified, thus making a plain distinction between
cases arising under that section, and cases arising under the 7th
section.    Yet in *Pearl* vs. *Howard,* cited above, which arose
under the 6th section, the court decided, that even there the rea-
sons for taking the proof must be certified upon the deed, and
appear of record in the town clerk's office.

But if the objection, that the record ought to be excluded be-
cause it is evidence *ab extra,* be not fatal, yet the record will not
help the certificates, unless it agrees with, and supports them, and
is also conformable to law.    The original summons sets forth that
the deed was executed in the presence of *D. T. McPherson* and
*Fs. Jetie,* who subscribed the same as witnesses.    The testi-
mony taken is that of *L. T. McPherson,* who swore, according
to the certificate of *P. Lyman,* that the deed was witnessed by

himself and *Frs. Tetu*; and the deed produced in evidence at the trial appeared to be witnessed by those persons. The complaint recited in the summons would not authorize the magistrate to take testimony to substantiate the deed read in evidence, it being a different instrument from that described in the complaint. Neither the certificate nor the record of the magistrate shew that *G. T. Chittenden* had refused to acknowledge the deed upon *proper* request. The record of the magistrate recites, that *sufficient* cause was shown for taking the testimony, but *what* cause does not appear. The record of the proceedings in the county court is extremely defective. It does not show that any testimony was taken, or that any examination was had by the court. It does not show, with legal certainty, that the judgment was rendered on an appeal taken from the judgment of the magistrate. It does not show that the judgment rendered by the magistrate was affirmed, or that the deed was allowed to be recorded, or, in short, that judgment was rendered for any thing but the costs. The record, therefore, wholly fails to support the certificate of *P. Lyman*, which can be of no force, further than as it is supported by the record. Lastly, the proceedings before the magistrate and in the county court, were never recorded in the town clerk's office. The defendant further contends that, inasmuch as the deed was executed under a foreign government, the grantee was not entitled to process.

The *second* principal question is, whether defendant was entitled to notice to quit, and if so, whether the notices given were sufficient. The tenancy commenced before the giving of the deed by *G. T. Chittenden* to plaintiff, and, therefore, the tenant has the same right against the plaintiff, that he would have against *G. T. Chittenden. Adams on ejectment,* 107.—*Birch* vs. *Wright,* 1 *T. R.* 379. And though the original tenant be dead, yet as he died leaving his widow in possession, the defendant contends that she is entitled to the same notice as her husband would have been, if living. Moreover, plaintiff has acknowledged her as his tenant, by attempting to give a notice to quit. If notice was necessary, the notices proved do not come up to the requirements of the law. They neither require the defendant to quit at a time certain, nor at the end of the year. They amount to no more than a simple demand of possession, although obviously intended as notices to quit, and offered at the trial as such. *See Adams on ejectment,* 129, 130, and authorities above cited. But admitting that the defendant was not entitled to notice to quit, at the time of the commencement of the action, yet the plaintiff

CHITTENDEN must show that he was entitled to recover at the time he lays his
January, 1830. ouster. *Adams' ejectment,* 189.—*Goodtitle* vs. *Herbert,* 4 *T. R.*
Catlin 680.—*Allen* vs. *Rogers,* 1 *John. Cas.* 283.—*Wright* vs. *Beard,*
vs. Washburn. 13 *East,* 210.—1 *Chit. Plead.* 191. The ouster is laid in
March,1821,five years before the death of the defendant's husband.
There can be no doubt he would have been entitled to notice,
and there is no pretence, that any notice was served on him, or
that he had disclaimed, before that time.

But the plaintiff contends that the denial of tenancy at the trial,
and putting the plaintiff to the proof of title, dispense with the
necessity of a notice to quit. If this be law, it is an exception to
the general rule, that the plaintiff must show a right of action in
himself *at the commencement of the suit.* Now, denying the ten-
ancy at the time of the trial has no tendency to show a *disclaimer*
previous to the commencement of the action, and there was no evi-
dence of any previous denial of tenancy. If the defendant was not
guilty at the commencement of the action, she cannot be made so
by relation. In *Jackson* vs. *Wheeler, (6 Johns. Rep.* 272,) it
is said, that though a disclaimer by the tenant dispenses with the
necessity of a notice to quit, yet the disclaimer must appear to
have been before the demise laid in the plaintiff's declaration.
Neither can putting the plaintiff to proof of title at the trial af-
fect the defendant's right to notice. If the plaintiff supposed he
had shown, or could show, that the defendant was his tenant, he
might have refused to introduce evidence of his title, and the
court would have charged that such evidence was unnecessary.
It was not in the power of the defendant to *compel* the introduc-
tion of such proof. The defendant could not be required to ad-
mit any thing, and is not to suffer for putting plaintiff to prove his
whole declaration. It is expressly laid down in *Archbold's Plead-
ings,* 531, that if the defendant were tenant from year to year to
the person under whom the lessor of the plaintiff claims (which is
the present case) the plaintiff must show his derivative title.

The *third* point is, whether the court ought not to have charged,
that plaintiff could not recover, if his deed was a mortgage which
had been satisfied, and that he could not recover at all for that
portion of the premises, the title to which had passed out of him
after the commencement of the action. In *Archbold's Pleadings,*
533, it is said, that tenant may show the payment of a mortgage
given by his landlord. In *England* vs. *Slade,* 4 *T. R.* 682, it
is said, that it is competent to the tenant to show that the title of
plaintiff's lessor has expired. See also *Starkie on evidence,* Part IV..

533, and *Archbold's Pleadings*, 533, where it is laid down that tenant may show that landlord has sold his interest in the premises.

CHITTENDEN
*January,*
1830.

Catlin
*vs.*
Washburn.

*Mr. Blodget, for the plaintiff.*—1. The deed was properly admitted, because the certificates on the back of it, made by *David Russell,* justice peace, and by *Phineas Lyman,* clerk of *Chittenden* county court, were agreeable to the 7th section of the law regulating conveyances under which the proceedings to authenticate the said deed were had. This section requires nothing more to be put on the back of the deed, or annexed thereto, by the justice before whom the proceedings are had, than such proof, meaning evidence, as was taken in the case, and a certificate thereof under the hand of said justice, wherein the presence or absence of such grantor or lessor, at such examination, shall be *particularly noted,* which shall be equivalent to a personal acknowledgement of the grantor or lessor, before a justice of the peace ; and if any appeal be taken therefrom, the courts respectively shall award costs to the party in whose favor *final determination* shall be made. The 6th section of the statute enumerates several instances where the grantee may procure the authentication of his deed when the same has not been acknowledged by the grantor : but in all these cases it contemplates the absence of the grantor, and no proceeding is instituted to cite him before the judge or court to hear evidence ; and if it should be adjudged that the judge or court, proceeding under this section of the statute, should particularly set forth the reason why they proceeded to take evidence, &c. it cannot be contended that it would be necessary under the 7th section, because that only enumerates a single instance of authenticating a deed, that is, when the grantor refuses to acknowledge. Then, notice shall issue to him, and the justice is required to note down, in particular the presence or absence of such grantor, in the certificate ; which sufficiently shows the reason for which the proceedings were had. And it was not contemplated by the legislature that the whole proceedings were to be spread on the back of the deed or annexed thereto.

The copy of the record was properly admitted, because the proceedings, which were the foundation of the record, were conformable to the 7th section of the statute regulating conveyances under which the proceedings were had ; for although the record of the county court is not set forth in the same words, which are contained in the certificate of the clerk on the back of said deed, that

CHITTENDEN
January,
1830.
———
Catlin
vs.
Washburn.
evidence of witnesses was taken, &c. yet it sets forth all that the statute requires. When an appeal is taken, the courts shall award costs to the party in whose favor *final determination* shall be made ; and in no instance does a record set forth the evidence on which a judgment is had ; but courts are bound, where a record sets forth that such proceedings were had that judgment was rendered for the one or the other party, to presume the proceedings were according to law. And the court are bound in this case to presume that the proceedings were legal, and that the plaintiff obtained his judgment in the case upon the proof which is set forth in the certificate on the back of said deed, and that costs were awarded to him on that ground, because the *statute* gives the court no power to award costs only to the party in whose favor *final determination* shall be had.

2. It was wholly immaterial whether the deed was a mortgage or an absolute deed, as the plaintiff would have a right to recover in ejectment on either, and the jury had nothing to do with the question whether the mortgage from *Chittenden* to the plaintiff, if the deed were such, was settled or not. So long as the title was good on the face of it, the plaintiff would have a right to recover in this action, and it would not be in the province of the defendant, whether tenant to the grantor or not, to compel the grantor and grantee to a settlement of that question in this action.

3. The plaintiff in this action was entitled to recover the whole premises, if any part ; for if he had a right at the commencement of this action, he could not be divested of that right, but by his own act ; and as to that part which was decreed by the court of chancery to *Benjamin Adams*, the time of redemption had not expired, and the plaintiff would have a right to the possession till that time had expired, and after, till he was legally ejected by a suit.

4. The defendant, after the death of her husband, was to the plaintiff as a mere stranger : there was no relationship subsisting between her and the plaintiff, which subsists between landlord and tenant, and therefore she was not entitled to *notice to quit*. But if she had any privilege on account of her husband's having lived on the premises for several years before, then the notice to him in March, 1826, and to her in July, 1826, were good, being more than six months before the commencement of this suit.

The defendant having put the plaintiff to the proof of his title in the trial, was virtually claiming to hold adverse, and, therefore, she was not entitled to notice to quit.

The opinion of the Court was delivered by

CHITTENDEN
*January,*
1830.

Catlin
*vs.*
Washburn.

WILLIAMS, J.—This case presents the following questions for consideration :

1st. Whether the deed executed by *Chittenden* to *Catlin* was duly proved so that it could be read in evidence.

2nd. Whether the defendant could insist on the want of a regular notice to quit before the plaintiff could recover in this action.

3d. Whether the deed executed by *Chittenden* was a mortgage deed, and the mortgage discharged by plaintiff.

4th. Whether the decree in chancery, made in the case between *Adams* and the plaintiff, was evidence that the title to a part of the premises in question was not in the plaintiff, so that, as to that part, a verdict should have passed for defendant.

It appears that the deed was executed at *Quebec*, and not acknowledged by the grantor before any authority recognized in this state, and that it was proved by the subscribing witnesses before *David Russell, Esq.* and afterwards before the county court ; and it is objected that this was not in pursuance of the statute, or that the reasons for proving the deed in this way do not appear from the certificate of the magistrate or clerk, and that this certificate cannot be helped by any proof *ab extra.*

In every case where a deed is executed in the presence of two witnesses who subscribe their names thereto, it is valid to convey the lands therein described as against the grantor and his heirs, and it may be perfected, so that it may be recorded and be valid against every one, either by the voluntary acknowledgement of the grantor, or by due proof of its execution, if he is dead or removed out of the state ; and if the grantor refuses to acknowledge it, such deed may be proved by the subscribing witnesses before a justice of the peace, after due notice to the grantor to be present.

The object of taking the acknowledgement or proof of a deed is to authorize its being recorded, and also that it may be read in evidence without any other proof of execution than the certificate of acknowledgement as proof. The primary object is to authorize the recording, and this is the only effect of the certificate of the acknowledgement or proof in some of the states. In *Massachusetts* the party claiming under a deed acknowledged and recorded is bound to prove the execution of it in the same manner as if it had not been acknowledged. *Pidge* vs. *Tyler et al.* 4 *Mass.* 541.— *Catlin* vs. *Ware,* 9 *Mass.* 218. And it is the same in *Rhode-Island and Missouri.* (*Aiken's Practical Forms, page* 102, 131.) After the statute of *Henry* VIII. *c.* 16, was passed, which required

CHITTENDEN deeds of bargain and sale to be enrolled, it became necessary that
January.
1830. the officer enrolling should have satisfactory evidence of the due
Catlin execution of the deed previous to his placing it on record ; and
vs. the acknowledgement of deeds is said to have originated from this
Washburn. statute. In *Co. Litt.* 225, 6, it is laid down " that no deed can
be enrolled unless it be duly and lawfully acknowledged." But
from the case of *Taylor* vs. *Jones*, (1 *Salk.* 389,) we learn, that a
deed may be enrolled upon due proof " that the party delivered it
without the examination of the party"—that if there were two
parties to a deed, the acknowledgement of one binds the other, and
that the practice was, if a man lived in *New-England*, and was
desirous of conveying land in *England*, he would join a nominal
party living in *England*, in the deed, and the acknowledgement
of such party was sufficient. In *New-York* deeds have been re-
corded on the acknowledgement of one of the *grantors* and his oath
that it was duly executed by the other grantor, and such record has
been admitted in evidence to shew title under the grantors.
*Jackson* vs. *Schoonmaker*, 2 *Johns.* 230.

But it is evident there is a further consequence attached to the
certificate of the acknowledgement or proof of a deed than
merely authorizing the enrolment or record. In 14th *Viner*, 446,
*p.* 10, it is said, " the enrolment of a deed, if it be acknowledged
by the grantor, is a sufficient proof of the deed of itself upon a tri-
al ; for every deed, before it is enrolled, is to be acknowledged
to be the deed of the party before a master of the court of chan-
cery, if enrolled in chancery, or before a judge of the court where
it is enrolled ; and this is the officer's warrant for enrolling it."
In this state it has been decided, and is considered as settled, that
a deed duly acknowledged or proved, and a certificate thereof
entered on the deed and recorded, may be read in evidence with-
out any further proof of its execution : and it is the same in most
of the states in the union, as we learn from the compendium of
their laws compiled with great industry and ability by judge
*Aikens* in a note to his Practical Forms.

The effect of the certificate of the acknowledgement or proof
of a deed being such, that the deed may be recorded and read in
evidence, without any further proof of its execution, it is highly im-
portant that there should be a compliance with the statute in eve-
ry particular in authenticating any deed of conveyance, and that
nothing more than the statute requires should be certified, as it
would be altogether useless to incumber the records with proceed-
ings which could be of no use to a person inquiring into the validi-
ty of a title ; and it may be remarked that in all the law in relation

to the acknowledgement or proof of deeds, nothing more is requir-ed to be taken and certified than such proof as is usually requir-ed in courts of law to prove the execution of a sealed instrument previous to its being read in evidence, to wit, the acknowledge-ment or admission of the party ; or, if he denies the execution, proof by the subscribing witnesses; or, when this cannot be had, proof of the hand writing of the grantor or witnesses, or such oth-er evidence as the nature of the case will admit. And it may be further remarked, that although a deed acknowledged or proved may be read in evidence, if it is liable to other objections, the party af-fected by it is still at liberty to contest its validity on any proper and legal grounds.

The 5th section of the statute regulating conveyances requires the personal acknowledgement of the grantor before a justice of the peace. The 6th section provides that when the grantor shall go beyond sea, remove, or abscond from the state, or be dead, be-fore the deed or conveyance be acknowledged, proof of such deed may be made by the oath of one or more of the subscribing witnesses before a councillor or judge of the supreme or connty court. And when the subscribing witnesses can be had, no oth-er evidence is admitted. But when the grantor and all the wit-nesses are dead, then the proof must be made before the county or supreme court, by proving the hand writing of the grantor or witnesses, or by other evidence to the satisfaction of the court ; and this evidence must be entered on the back of the deed. This section supposes the proof to be taken in the absence of the gran-tor, and provides for cases where there would be no objection on his part to acknowledge the deed if he were present. And as different kinds of proof are to be taken, and before different tribu-nals, in the several contingences provided for in this section, there may be some reason why those facts, which authorize these different modes of proof, should appear in the certificate en-tered on the deed ; and if it is considered that these cases are ex-ceptions to the general provisions of the statute, according to the opinion expressed in *Pearl* vs. *Howard*, ( *Chip. Rep.* 173,) it is proper that it should appear in the certificate to be a case within the exceptions. At any rate, it was so decided in the case last referred to, and that decision is recognized as an authority in all cases arising under this section of the statute.

But the 7th section of the statute, under which the deed in ques-tion was proved, provides for taking the proof of conveyances in one event only, viz. when the grantor refuses to acknowledge, and

CHITTENDEN this proof can only be by the testimony of the subscribing wit-
January, nesses. It contemplates that the grantor resides within the state,
1830. and provides that he shall have notice of the time when the proof
——— is taken: whereas in the proceedings under the preceding section
Catlin the grantor is not to be notified. This proof must be taken by a justice
vs. of the peace who is required to issue a summons to the grantor to
Washburn. appear before him to hear the testimony of the witnesses, but all that
is required to be put on or annexed to the deed, is the proof so taken
and a certificate thereof, and a notice that the grantor was present or
absent. If the grantor was present, it is unnecessary to state wheth-
er he was notified or not; but if he was not present, it is proper
that the magistrate should certify that he was duly summoned to
appear to hear the testimony.

It cannot be necessary for the justice to certify, as has been ur-
ged in the argument, that the grantor had refused to acknowledge
the deed, as this refusal must precede the application to him, and
could only become of consequence on the question of taxing
the costs. If there was a readiness on the part of the grantor to
acknowledge, it is not to be supposed that the grantee would re-
fuse to accept the acknowledgement and prefer taking the testi-
mony. If, then, it should appear by the certificate of a justice,
that one or more of the subscribing witnesses to a deed made oath
before him to the execution of the same, as prescribed by the statute,
and the proof and certificate thereof should be entered on the back
of such deed, or annexed thereto, stating in the certificate, that the
examination of the witnesses was had in the presence of the gran-
tor, or, if in his absence, that he was duly summoned to appear
to hear the testimony, there can be no valid objection to the deed,
because the grantor did not acknowledge it, which would have
superceded the necessity of the proof. In *Massachusetts* and
*New-Hampshire*, the statutes in relation to the acknowledgment
and proof of deeds are similar to ours. In those states, when the
grantor is dead, removed out of the state, or beyond sea, in the
certificate of the proof that fact is stated, but when he refuses to
acknowledge, the proof by the subscribing witnesses is certified
in the same manner that it is in the deed under consideration,
with only this difference, that in *New-Hampshire* the justice cer-
tifies that the grantor was duly summoned, whether he was present
or absent; but in *Massachusetts*, nothing is certified as to his being
summoned, if he is present; but if absent, it is certified that he was
duly summoned. *Aiken's Prac. Forms, p.* 97, 99. We are of
opinion that under this section of the statute nothing more is ne-

CHITTENDEN
January,
1830.

Catlin
vs.
Washburn.

cessary to the authentication of a deed, than a certificate of the proof by the subscribing witnesses, and a notice of the presence or absence of the grantor at the examination of the witnesses, and if he was absent, a certificate that he was duly summoned.

It appears that the deed under consideration was proved by the testimony of the subscribing witnesses, the grantor being present by his attorney ; and the proof was certified on the deed by the justice who took the same, *Mr. Russell,* and on his certificate it was regularly recorded, and was read as evidence on the trial. It was not necessary for the plaintiff to read the record of the county court in *Chittenden* county to authorize the reading of the deed ; but inasmuch as that record is a part of the case, the effect of it, together with the subsequent certificate of the clerk, have been considered by the court. I will here remark .that in neither of the statutes of *Massachusetts* or *New-Hampshire* is there any provision for taxing cost or taking an appeal ; and it is somewhat difficult to say under our statute, from what the appeal is taken, unless it is the adjudication in relation to the cost. In taking the testimony, the justice renders no judgment, or, in the language of the statute, makes no " determination" by which either party can be aggrieved. And from this record it appears, that the only determination appealed from was the judgment that *Catlin* should recover his cost. The appeal can have no effect whatever on the proof taken by the justice and certified on the deed. In this case, it seems the witnesses were again examined before the county court, and again swore to the execution of the deed, and if it was of any consequence to have any further certificate, the one made by the clerk, *Mr. Lyman,* is sufficient to show, that the deed was again proved before the county court. The certificate of the clerk is liable to only one exception, to wit, in not noticing whether the grantor was present or absent : but as the jurisdiction of the county court upon this subject, if they have any, is only appellate, it is not material whether the grantor was present or absent, if he was present, or duly summoned to be present, before the justice. We consider that the certificate of *Mr. Russell,* the justice, was sufficient to authorize the recording and reading of the deed, and that if it was, at all, necessary for the county court to make any further certificate, the one annexed to the deed by the clerk was all that could be required, and that their certificates are neither invalidated or made good by the production of the record.

The objection taken on account of the apparent difference in

CHITTENDEN spelling the names of the witnesses in the summons and in the cer-
January,
1830.    tificate cannot be considered as sound. It appears they were
———     foreigners, and there probably was some difficulty in ascertaining
Catlin
vs.     from the signatures precisely what their names were. The wit-
Washburn.
nesses to the deed were the persons examined, according to the
certificates, and it is no way material what they were called in the
summons. On every question which has been made in relation to
this deed, we are of opinion that there was no sufficient objection
to it, and that the county court decided correctly in overruling the
objections, and admitting the same.

The second question raised in this case is whether the defen-
dant was entitled to notice to quit; for if she was, the notices
read at the trial, and objected to by defendant, are so obviously
defective, according to the decision of this court in *Hanchet vs.
Whitney*, (1 *Vt. Rep.* 311,) that they should have been exclu-
ded, and the defendant on that account would have been entitled
to a verdict. It appears that *Edward Washburn* died in 1826,
leaving the defendant, his widow, in possession of the premises.
But it does not appear that she was either executrix or adminis-
tratrix to his estate, or guardian to the children; and if her hus-
band, in his lifetime, was tenant from year to year, and as such,
entitled to notice to quit before his tenancy could be determined,
it by no means follows that she was entitled to such notice, but it
would rather seem that she was in possession without right and
liable to be ejected at any time by the right owner. But in this
case, on the trial, she denied the title of the plaintiff, and also her
being his tenant, and put him on the proof of both. This was
equivalent to an admission that she did not claim to hold as his ten-
ant, but claimed the premises adverse to him. And it is a clear
principle that when a tenant disclaims to hold as tenant, but holds
adverse to the landlord, no notice to quit is necessary. *Doe vs.
Williams, Cowp.* 621.—*Bull. N. P.* 96. If the defendant on
the trial had not denied her tenancy, and had admitted the title of
*Chittenden*, requiring the plaintiff to show his derivative title from
*Chittenden*, she would not thereby have waived her right to a no-
tice to quit, if she was entitled to such notice. This accords with
the determination in the case of *Jackson vs. Bryan*, (1 *Johns.*
322,) and with what is laid down in *Archbold's Pleadings*, 531.
But in this case the plaintiff was compelled not only to show his
title from *Chittenden*, but also the title of *Chittenden*. It would
have been manifestly improper for the defendant, after having
thus contested every point with the plaintiff, denying that she was

CHITTENDEN
January.
1830.

Catlin
vs.
Washburn.

his tenant, and denying that he or *Chittenden*, under whom her husband went into possession, had any title, when the plaintiff had succeeded in proving these points, to admit that she was his tenant, and say that she did not hold adverse to him, and claim that she was entitled to a regular notice to quit before she could be turned out of possession.

It has been contended, that it was necessary for the plaintiff to show that he was entitled to recover at the time of the ouster. In the proceedings in *ejectment* in *England*, which are totally different from the proceedings in this state, it is necessary to allege the time of the demise some day after the lessor's right commenced : but it is not necessary to state the day of the ouster, though it should be stated after the day of the demise. But the authorities which have been read on this point are wholly inapplicable to the action of *ejectment* given by our statute ; and it does not appear that any question was made in the county court in relation to the day on which the ouster is alleged to have been made. It was necessary for the plaintiff to show a complete cause of action at the time of commencing his suit ; and this was shewn by proving a title in himself, and an adverse possession of the defendant. We are of opinion that in all cases where a defendant in *ejectment* denies the title of the plaintiff, and also denies his tenancy, or, which is equivalent thereto, requires the plaintiff to prove these points, he cannot insist on the want of notice to quit, although it should appear in the course of the trial that he was tenant from year to year to the plaintiff ; and that on this point the county court charged the jury correctly.

The third point made in the case has not been much insisted on in the argument. It is unquestionably true that it was competent for the defendant to show that the plaintiff's title had ceased, or become extinct, at the time of the trial. But if it is admitted that the plaintiff's deed from *Chittenden* was a mortgage, in consequence of the receipt or writing executed by the plaintiff, at the date of the deed, yet the writing executed between *Truman Chittenden* and plaintiff on the 17th March, 1825, does not show any other payment of the sums mentioned in the writing, which is called the writing of defeasance, except the deed of the land. By the writing first executed *Catlin* agreed to receive the land in full payment of the sums therein mentioned, and by the writing executed by *Truman Chittenden* and *Catlin* in March, 1825, it was agreed that he should hold the same land conveyed by that deed in full satisfaction of the same demands. An agreement between a mortgagor and mortgagee that the mortgagee should

F

<div style="margin-left:margin">CHITTENDEN<br>January,<br>1830.<br><br>Catlin<br>vs.<br>Washburn.</div>

hold the lands mortgaged in satisfaction of his debt, could never be construed as discharging the mortgage and paying the debt at the same time; and it would be a strange and singular construction to put on this writing to say that *Catlin*, by agreeing to hold the land in satisfaction of his demands against *Chittenden*, thereby discharged his title to the land, and discharged his demands, and would be as repugnant to common sense as it is repugnant to law and justice. As between *Catlin* and *Truman Chittenden*, it was an agreement on the one side to release his equity of redemption, and on the other, in consideration thereof, to receive the land freed of any equity of redemption in satisfaction of his claims.

On the last point we are of opinion, that the decree of foreclosure made in the case of *Adams* against the plaintiff, the time for the redemption therein mentioned not having expired, could have no effect on the rights of the present plaintiff in this suit. It did not prove that the plaintiff was divested of his title to the lands therein contained, so that he could not maintain this action. At the time of the trial he had a right to the possession as against this defendant, and the decree did not in the least impair or affect that right.

<div style="text-align:right">The judgement of the county court must, therefore, be affirmed.</div>

*Blodget*, for plaintiff.
*Bailey* and *Marsh*, for defendant.